IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PATRICIA VANHUSS, LORETTA
LOMASTRO and JOINT EFFECTS,

|  |  |  |
|---|---|---|
| | Plaintiffs, | OPINION & ORDER |
| v. | | |
| | | 14-cv-839-wmc |
| KOHN LAW FIRM S.C. and DISCOVER BANK, | | |
| | Defendants. | |

Invoking the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Wisconsin Consumer Act ("WCA"), Wis. Stat. § 421 *et seq.*, plaintiffs allege that defendants Kohn Law Firm and Discovery Bank engaged in unlawful and unfair practices by garnishing funds to which they had no legal right. Specifically, according to the complaint, defendant Discovery Bank, through its counsel Kohn Law Firm S.C. ("Kohn"), filed a lawsuit against plaintiff Patricia VanHuss and obtained a judgment against her. It then filed a Non-Earnings Garnishment against Patricia VanHuss "DBA Joint Effects," changing the case's caption so that it appeared the judgment was not only against VanHuss but also against Joint Effects, a partnership she ran with plaintiff Loretta LoMastro.

Several motions are currently pending before the court, including plaintiffs' motions to strike defendants' bona fide error defense (dkt. #17) and to quash defendants' subpoena *duces tecum* of third-party Citibank, N.A. (dkt. #25), as well as defendants' motion for judgment on the pleadings (dkt. #27). For the reasons stated below, the court will deny

plaintiffs' motions, while granting in part and denying in part defendants' motion for judgment on the pleadings.[1]

OPINION

## I. Motion to Strike

In answering the complaint, defendants pled a number of affirmative defenses, including that "[a]ny alleged violations were not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  (Answer (dkt. #15) 5, ¶ 9.)   This partial defense is recognized in 15 U.S.C. § 1692k(c), which provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

The WCA contains a similar provision that insulates a defendant from specific statutory penalties if the defendant's violation was unintentional and resulted from a bona fide error notwithstanding the maintenance of preventative procedures.  Wis. Stat. § 425.301(3).

Plaintiffs motion to strike the bona fide error defense takes the position that defendants had not pled "with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  In response, defendants filed an amended answer, which added the following allegations:

---

[1] Having now resolved the motion for judgment on the pleadings, defendants' motion to stay discovery pending its resolution will also be denied as moot (dkt. #30), as will defendants' motion to file a reply in support of the motion to stay (dkt. #35).

> Any alleged violations were not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. At the time of the garnishment, the defendants reasonably believed that Joint Effects was a sole proprietorship rather than a partnership based upon statements and representations made by VanHuss. Specifically, during a pre-trial conference in the underlying Sauk County state court proceeding held on July 2, 2013, VanHuss stated that she was a sole proprietor. The defendants have processes and procedures in place to avoid the filing of bank garnishments that would knowingly result in the attachment of funds to which the defendants are not entitled, and those processes and procedures were in place at the time of the events allegedly giving rise to this lawsuit.

(Am. Answer (dkt. #21) 5, ¶ 9.)  Plaintiffs have to date refused to withdraw their motion to strike, however, arguing that defendants have still not pled sufficient facts to know what specific procedures were in place to ensure that they did not file unlawful garnishments.

Motions to strike affirmative defenses are generally disfavored because they frequently serve only to delay. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).  Accordingly, a motion to strike is generally appropriate only where the challenged defense "is frivolous or clearly presents no bona fide issue of fact or law." *Prudential Ins. Co. of Am. v. Marine Nat'l Exchange Bank*, 55 F.R.D. 436, 438 (E.D. Wis. 1972).  Similarly, before granting a motion to strike, courts generally "must 'be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed.'" *In re Midway Airlines, Inc.*, 175 B.R. 239, 242 (Bankr. N.D. Ill. 1994) (applying Fed. R. Civ. P. 12(f) (quoting *Lirtzman v. Spiegel, Inc.*, 493 F. Supp. 1029, 1031 (N.D. Ill. 1980)).

On the other hand, the Seventh Circuit has recognized that affirmative defenses are "subject to all pleading requirements of the Federal Rules of Civil Procedure." *Heller*, 883

3

F.2d at 1294.  Ordinarily, this requires that the pleading party set forth a "short and plain statement" of the defense.  *Id.* (citing Fed. R. Civ. P. 8(a); *Bobbitt v. Victorian House, Inc.*, 532 F. Supp. 734, 737 (N.D. Ill. 1982)).

Here, the defense at issue is one of bona fide error -- that is, "a genuine mistake." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 538 (7th Cir. 2005).  Alleging mistake requires a party to state the circumstances constituting the mistake "with particularity." Fed. R. Civ. P. 9(b).  At least one court has held, albeit without extensive analysis, that the bona fide error defense is subject to the heightened pleading requirements of Rule 9(b).  *See Lowe v. Diversified Consultants, Inc.*, No. 12 C 2009, 2012 WL 3776715, at *1 (N.D. Ill. Aug. 30, 2012).  Although there is a real question as to whether requiring a party to plead *its own* mistake with particularity makes sense in light of the purposes behind the heightened pleading standard,[2] the plain language would appear to require it, and so the court will assume Rule 9(b) applies.

Rule 9(b) requires defendants to plead the "who, what, when, where, and how" of the alleged mistake.  *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).  Here, defendants have done exactly that.  According to defendants, VanHuss made an erroneous statement at a pre-trial conference on July 2, 2013, that she was a "sole proprietor."  This alone suffices to establish the "when, where and how" of the alleged mistake, as well as *who* precipitated it.  Defendants have also alleged *what* their mistake actually was: based on

---

[2] Rule 9(b) "serves three purposes: (1) informing defendants of the nature of the alleged wrong, so they may mount an adequate defense; (2) eliminating conclusory complaints filed as a pretext for using discovery to uncover heretofore unknown wrongs; and (3) protecting defendants from spurious fraud charges that might be particularly damaging to reputation."  *Levine v. Prudential Bache Props., Inc.*, 855 F. Supp. 924, 929-30 (N.D. Ill. 1994); *see also Fid. Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 748-49 (7th Cir. 2005).  While these rationales make sense in cases in which one party pleads that its *opponent* has committed fraud or mistake, none clearly apply in cases where a party pleads its *own* mistake as a defense.

VanHuss's statement that she was a sole proprietor, defendants believed incorrectly that Joint Effects was a sole proprietorship and that they could legally garnish its accounts.  This is sufficient to comply even with the heightened standard of Rule 9(b) and to assure the court that, contrary to plaintiffs' argument, the bona fide error defense is not "unnecessary clutter."  *Heller*, 883 F.2d at 1294.

Finally, plaintiffs cite *Reichert v. National Credit Systems, Inc.*, 531 F.3d 1002 (9th Cir. 2008), for the proposition that "a showing of 'procedures reasonably adapted to avoid any such error' must require more than a mere assertion to that effect" and that the "procedures themselves must be explained, along with the manner in which they were adapted to avoid the error."  *Id.* at 1007.  But *Reichert* was not a case dealing with the sufficiency of pleadings; it addressed what a debt collector must demonstrate in order to establish the bona fide error defense *at summary judgment*.  *See id.*  Plaintiffs cite no case requiring that same level of detail at the pleadings stage.  Accordingly, the motion to strike will be denied.

## II. Motion to Quash Defendants' Subpeona

Pursuant to Federal Rule of Procedure 45, plaintiffs also move to quash defendants' subpoena commanding Citibank to produce copies of billing statements for an AT&T Universal Rewards credit card account it issued to VanHuss.  Though the state court proceedings giving rise to this action concerned an unpaid balance on a credit card account issued by Discover Bank, one of the charges comprising that debt was supposedly a $10,000 balance transfer from the Citibank AT&T card.  Defendants seek these billing statements in order to determine whether VanHuss made the charges on the AT&T card for business purposes or for her own personal use, as the FDCPA applies to debt arising out of

transactions for which the subject is "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

Plaintiffs argue that the court should quash defendants' subpoena because it seeks protected information that VanHuss expected would remain confidential. But as defendants point out, plaintiffs have cited no authority demonstrating that VanHuss's privacy interests with respect to the AT&T card billing statements outweigh defendants' interest in obtaining discoverable information, nor shown that they will not be able to protect VanHuss's privacy by moving to seal her billing records.[3] Plaintiffs add that any further discovery on this issue would be unduly burdensome, because VanHuss testified at her deposition that she used the card only for personal expenses. Defendants counter that VanHuss represented that she used the AT&T card for business purposes during the underlying state court proceeding. Regardless, the motion to quash will be denied because: (1) the question of whether the debt at issue in this case is consumer debt is relevant to defendants' arguments under the FDCPA and WPA; (2) defendants are entitled to test VanHuss's testimony to the contrary; and (3) plaintiffs have not demonstrated that defendants' subpoena is overly broad or unduly burdensome.

## III.  Judgment on the Pleadings

Finally, defendants moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), seeking dismissal of all of plaintiffs' claims. "Like Rule 12(b) motions, courts grant a Rule 12(c) motion only if 'it appears beyond doubt that the plaintiff cannot prove any facts

---

[3] On this score, to the extent the parties have not done so already, they are directed to promptly enter into a good faith, straightforward protective order for legitimately confidential information, whether produced by a party or third-party.

that would support his claim for relief.'" *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (quoting *Craigs, Inc. v. Gen. Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir. 1993)).  "Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *Id.*  Just as with a summary judgment motion, the court also views the facts in the complaint in the light most favorable to the non-moving party, *GATX Leasing Corp. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995), although it need not ignore facts set forth in the complaint that undermine the plaintiff's claim or assign weight to unsupported conclusions of law, *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452 (quoting *R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989)).

## A. Allegations in the Pleadings

Plaintiff Patricia VanHuss resides in Reedsburg and plaintiff Loretta LoMastro resides in Baraboo, both of which are in Sauk County, Wisconsin.  The final plaintiff, Joint Effects, is a partnership in which VanHuss and LoMastro are both equal partners.  Defendant Kohn Law Firm S.C. ("Kohn") is located in Milwaukee, Wisconsin; its primary business purpose is debt collection; and it regularly collects or attempts to collect debts on behalf of its clients, including defendant Discover Bank.

On or about April 26, 2013, Kohn filed a lawsuit against VanHuss in Sauk County Circuit Court on behalf of its client, Discover Bank.  The Sauk County lawsuit sought to recover a debt arising from various charges on a Discover credit card issued under a consumer credit agreement between VanHuss and Discover Bank.  The charges were

primarily for personal and family use and included a balance transfer from another personal credit card.  Neither LoMastro nor Joint Effects was a party to the Sauk County lawsuit.

VanHuss did not dispute the charges and agreed to the entry of judgment against herself in the amount of $10,068.56.  (Am. Compl. Ex. B (dkt. #11-2).)[4]  The Sauk County Circuit Court accordingly entered judgment on July 3, 2013, against "Patti Vanhuss AKA Patricia A. Vanhuss."  (*Id.* at Ex. C (dkt. #11-3).)

On January 15, 2014, Kohn filed a Non-Earnings Garnishment on Discover Bank's behalf.  In its pleading, Kohn identified the debtor as "Patti VanHuss aka Patricia A VanHuss DBA Joint Effects."  (*Id.* at Ex. D (dkt. #11-4).)  On February 11, Kohn further filed a proposed "Order to Garnishee" with the clerk of court and served it on VanHuss and Baraboo National Bank; the proposed order requested that Baraboo National Bank pay to Discover Bank and Kohn amounts that it was holding on behalf of "Patti VanHuss aka Patricia A VanHuss DBA Joint Effects."  (*Id.* at Ex. E (dkt. #11-5).)  Once Kohn served the order, Baraboo National Bank apparently froze an account belonging to Joint Effects.  As a result, LoMastro, VanHuss and Joint Effects could not access the funds in question for personal or business use.

Two days later, the Sauk County Circuit Court ordered the dismissal of the non-earnings garnishment upon VanHuss's objection.  That order read in its entirety as follows:

> This action was commenced by plaintiff against defendant Patti VanHuss.  Judgment was granted to plaintiff by way of a consent to judgment.  Throughout the proceedings defendant was identified as Patti VanHuss including the summons and complaint and judgment form.

---

[4] Because these exhibits are attached to the complaint, they are a part of the pleading for all purposes, Fed. R. Civ. P. 10(c), and the court considers them in resolving the motion for judgment on the pleadings.

> When it began a non-earnings garnishment plaintiff changed the caption as it related to defendant so it read Patti VanHuss d/b/a Joint Effects. Nowhere else in the file is any reference to "Joint Effects."
>
> Ms. VanHuss has objected to the garnishment contending that the funds seized were from an entity not responsible for the debt to plaintiff. She also alleges that plaintiff falsified court documents in bringing the garnishment.
>
> A hearing was held before the court commissioner on February 12, 2014 and based upon that hearing and the entire file:
>
> **IT IS ORDERED** that the garnishment is dismissed and the garnishee, Baraboo National Bank, shall release all funds being held back into the account from which it was taken. The basis of this order is that plaintiff has unilaterally and without court order changed the caption to make it appear that the judgment is against an entity against whom the action was never brought.

(*Id.* at Ex. F (dkt. #11-6).) VanHuss then moved to reopen the small claims judgment, seeking to raise various defenses, but the Sauk County Circuit Court denied the motion, stating that the claimed violations had occurred after the entry of judgment, to which VanHuss had consented. (*Id.* at Ex. G (dkt. #11-7).)[5]

Plaintiffs then brought the present federal suit, alleging violations of the FDCPA, sections 1692e(5) and 1692f, as well as violations of the WCA, sections 427.104(1)(j) and 425.107, and Wisconsin common law conversion.

## B. Analysis

### i. Whether the Conduct as Pled Can Support Any Cause of Action

Defendants first argue that it was not illegal for them to alter the caption in the garnishment action because there is no legal requirement that the caption match that in the

---

[5] The *Rooker-Feldman* doctrine "applies when the state court's judgment is the source of the injury of which plaintiffs complain in federal court." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). Here, the state court in this case ultimately ruled *in favor* of plaintiffs. Accordingly, plaintiffs appear to seek *additional* damages consistent with the state court's ruling.

9

underlying action.  Defendants' argument is premised on the principle that in Wisconsin, a garnishment action is a "separate action" from the underlying action forming the basis for garnishment.  Wis. Stat. § 812.01(2a); *see also Paul Davis Restoration of S.E. Wis., Inc. v. Paul Davis Restoration of Ne. Wis.*, 2013 WI 49, ¶ 10, 347 Wis. 2d 614, 831 N.W.2d 413 (noting that "it is well established that a garnishment action is an action independent of the judgment for which it seeks to recover payment and is instituted separately according to statute").  Thus, there is no absolute "right" to have the caption of a garnishment action match the underlying action establishing liability.  Defendants also point out that the designation "DBA" does not create a distinct entity but rather describes a person or corporation that does business under a different name -- presumably meant to suggest that their addition of "DBA Joint Effects" to the caption had no legal effect.

This argument appears to miss the mark, particularly at the pleading stage.  Plaintiffs do not contend that the law requires the captions between an action creating liability and a garnishment action to "match," nor do they suggest that defendants attempted to create a non-existence entity by adding "DBA Joint Effects" to the garnishment caption.  Rather, their claim is that defendants froze and attempted to garnish funds to which they had no legal right by crafting a caption that incorrectly suggested Joint Effects was simply another name for Patricia VanHuss.  This may or may not run afoul of Wisconsin law.  *Compare* Wis. Stat. § 812.01(1) ("Any creditor may proceed against any person who is indebted to or has any property in his or her possession or under his or her control *belonging to such creditor's debtor*[.]") (emphasis added), *with* Wis. Stat. § 178.21(3)(c) ("A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership."), *AG Servs. of Am., Inc. v. Krejchik*, 2002 WI App 6, ¶ 15, 250 Wis. 2d 340,

10

640 N.W.2d 125 (noting that generally, "partnership assets are not subject to garnishment to satisfy the debts of individual partners").  Thus, the court rejects defendants' assertion that the alteration of the caption in the garnishment action cannot give rise to liability as a matter of law.

ii.     **Whether the FDCPA Applies**

Defendants next contend that 15 U.S.C. § 1692e(5) does not apply to this action as pled.  Section 1692e(5) provides that a debt collector violates the FDCPA if it makes a "threat to take any action that cannot legally be taken or that is not intended to be taken." Defendants argue that this provision applies only to *threats* of action that cannot legally be taken -- not to purportedly illegal actions *actually* taken.  This view finds significant support in district courts within the Seventh Circuit, although it appears the Seventh Circuit itself has not yet addressed the issue.  As then District Judge Hamilton held in *Clark v. Pollard*, No. IP 99-1414-C H/G, 2000 WL 1902183 (S.D. Ind. Dec. 28, 2000), "[b]y its plain language, subsection (5) applies to threats of action, not to actions actually taken."  Id. at *3; *see also Bravo v. Midland Credit Mgmt., Inc.*, No. 14 C 4510, 2014 WL 6980438, at *3 (N.D. Ill. Dec. 9, 2014) ("By its plain terms, § 1692e(5) prohibits only the *threat* of unlawful action, not the unlawful action *itself*; the complaint, by contrast, alleges that Midland took unlawful action.") (emphasis in original); *Fick v. Am. Acceptance Co.*, No. 3:11 CV 229, 2012 WL 1074288, at *4 (N.D. Ind. Mar. 28, 2012) (dismissing § 1692e claim where "plaintiff has only alleged actual action taken, instead of threats of action"); *Wehrheim v. Secrest*, No. IP 00-1328-C-T/K, 2002 WL 31242783, at *5 (S.D. Ind. Aug. 16, 2002) ("Plaintiff's claims in the instant case are based upon actions actually taken by

11

Defendant. The court rejects Plaintiff's attempt to equate threats of action with actions actually taken."); b*ut see Taylor v. Midland Funding*, LLC, No. 14 C 9277, 2015 WL 1456442, at *5 (N.D. Ill. Mar. 20, 2015) ("[T]he Court cannot conclude at this point in the litigation that the actual filing versus the threat of filing a time-barred proof of claim in a bankruptcy case is not viable under . . . § 1692e(5).").

In response, plaintiffs point out that various courts in other circuits have taken the opposite approach, apparently reasoning that the FDCPA should not provide "*more* protection to debt collectors who violate the law than to those who merely threaten or pretend to do so." *Sprinkle v. SB&C Ltd.*, 472 F. Supp. 2d 1235, 1247 (W.D. Wash. 2006) (emphasis added); *see also Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 730 (D. Md. 2011) (interpreting § 1692e(5) to "include the *taking* of 'action that cannot legally be taken'"); *Marchant v. U.S. Collections W., Inc.*, 12 F. Supp. 2d 1001, 1006 (D. Ariz. 1998) ("To argue that a collection agency can avoid the strictures of the FDCPA simply by acting where it has no legal authority, as opposed to *threatening* to act where it has no legal authority, would defy the very purposes of the section.") (emphasis in original). Others appear to presume that § 1692e(5) applies in cases where a debt collector *actually* took action it could not legally take without analyzing the significance of the word "threat" in the statute. *See, e.g.*, *Poirier v. Alco Collections, Inc.*, 107 F.3d 347, 350-51 (5th Cir. 1997); *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 803-05 (S.D. Ohio 2006).

This court agrees with the majority of district courts in this circuit that extending § 1692e(5) to apply to actions actually taken conflicts with the statutory text. As the *Bravo* court noted:

> Elsewhere in the FDCPA, Congress was explicit when it intended to prohibit both threats to act and actually acting. *See* 15 U.S.C. § 1692d(1) (prohibiting "[t]he use *or* threat of use of violence or other criminal means" in connection with debt collection) (emphasis added). That Congress did not do the same thing in § 1692e(5) confirms that Congress intended that provision to prohibit only threats, not actions.

*Bravo*, 2014 WL 6980438, at *3.

This is not to say that actually taking an illegal action in connection with the collection of a debt *cannot* subject a debt collector to liability under the FDCPA. For example, if the illegal means are otherwise misleading or unconscionable, a plaintiff may well have a claim under other sections of the FDCPA. *See, e.g.*, *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1079 (7th Cir. 2013) (debtor stated claim under the FDCPA, §§ 1692e and 1692f generally, where she alleged that the debt collector sued her after the statute of limitations on the creditor's claim had run). Accordingly, the court declines to ignore the plain language of § 1692e(5) in order to expand its protections. *See Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 520 (S.D.N.Y. 2013) ("[W]e do not think there is a warrant in case law simply to rewrite a statute based on a court's view as to its efficaciousness. . . . Accordingly, we join those courts that have construed the statute in accordance with its unambiguous language."). In light of the above, defendants are entitled to judgment on plaintiffs' § 1692e(5) claims.[6]

---

[6] "Plaintiffs need only plead facts, not legal theories, in their complaints," *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014), and a plaintiff "need not allege a violation of a specific subsection in order to succeed in a § 1692e case." *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012). Of course, here, plaintiffs did identify § 1692e(5), specifically, in their complaint. (Am. Compl. (dkt. #11) ¶ 33.) Even if plaintiffs had pled a claim under § 1692e more generally, however, the conduct they challenge does not fit the rubric of that statutory provision. The Seventh Circuit has held that the prohibitions of § 1692e, though broadly written, are "clearly limited to communications directed to the consumer" when "read in light of the Act's purpose and numerous provisions." *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 941 (7th Cir. 2011) (emphasis

13

Plaintiffs also allege that defendants' conduct violated § 1692f, which states generally that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. As the Seventh Circuit has recognized, the "statute does not say" what is unfair or unconscionable, *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007), although it contains a non-exhaustive list of conduct that violates § 1692f. Defendants base their first argument on § 1692f(6)(C), which prohibits taking "nonjudicial action to effect dispossession or disablement of property if . . . the property is exempt by law from such dispossession or disablement." According to defendants, § 1692f cannot possibly apply to the taking of *judicial* action to effect dispossession of exempt property, like the state court garnishment action they filed, when § 1692f(6) explicitly refers to *non-judicial* action to effect dispossession of exempt property. Given the non-exhaustive nature of the list in § 1692f, however, the court has trouble adopting defendants' argument that Congress "expressly limit[ed] the scope of the statute to nonjudicial actions." (Defs.' Br. Support (dkt. #27) 8.) Absent any case law on point (and defendants cite none), the court declines to foreclose this theory of relief as a matter of law.[7]

Defendants also contend that § 1692f, as a catch-all provision, applies only to conduct that is "unfair but is not specifically identified in any other section of the FDCPA."

---

added). More specifically, § 1692e is intended to "keep consumers from being intimidated or tricked by debt collectors." *Id.* (emphasis added). It is, therefore, "limited to protecting consumers and those who have a special relationship with the consumer -- such that the Act is still protecting the consumer -- from statements that would mislead these consumers." *Id.* at 943. Defendants' actions, as pled, may have misled the Sauk County Circuit Court or Baraboo National Bank, but they were not misleading to VanHuss, the consumer in this case. *Cf. id.* (no claim under § 1692e where allegedly deceptive conduct was the filing of a summons and complaint with an exhibit that resembled an authentic credit card statement but was not).

[7] To the extent defendants intend to argue that plaintiffs have not *pled a claim* under § 1692f(6), specifically, the court notes that while the amended complaint does not invoke that specific subsection, it expressly relies on the broader protections of § 1692f generally. (Am. Compl. (dkt. #11) ¶ 34.)

(*Id.*)  They argue that because plaintiffs have only pled conduct that they contend violates *other* provisions of the FDCPA, that conduct cannot implicate § 1692f.  *See, e.g.*, *Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 432 (D.N.J. 2013) ("Courts have therefore determined that § 1692f cannot be the basis of a separate claim for complained of conduct that is already explicitly addressed by other sections of the FDCPA[.]"); *Chalik v. Westport Recovery Corp.*, 677 F. Supp. 2d 1322, 1329 (S.D. Fla. 2009) ("However, a claim of a violation of Section 1692f is deficient if it 'does not identify any misconduct beyond that which Plaintiffs assert violate other provisions of the FDCPA.'") (quoting *Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006)); *see also Christy v. EOS CCA*, 905 F. Supp. 2d 648, 656 (E.D. Pa. 2012).  While expressing no opinion on its merits generally, judgment on the pleadings on this ground would seem inappropriate under the circumstances.

More specifically, the court has already found that the conduct of which plaintiffs complain does *not* fit § 1692e(5), the only other FDCPA provision that they specifically cite. Neither party argues that the conduct fits one of the FDCPA's other specific prohibitions, nor does a review of the statute reveal any provisions that are an obvious match.  *See generally* 15 U.S.C. § 1692 *et seq.*  Certainly, dismissal of the § 1692f claim would be appropriate if plaintiffs *had* successfully pled a viable § 1692e(5) claim based on identical facts, since it would then be reasonable to conclude that plaintiffs were "attempting to bootstrap a § 1692f claim onto" a different FDCPA violation.  *See Eslava v. AllianceOne Receivables Mgmt., Inc.*, No. 12-0425-WS-N, 2012 WL 4336012, at *4 (S.D. Ala. Sept. 20, 2012).  But here, plaintiffs' allegations do *not* clearly fit a different, more specific FDCPA provision.  *Cf., e.g.*, *Baker v. Allstate Fin. Servs., Inc.*, 554 F. Supp. 2d 945, 953 (D. Minn.

2008) ("Baker's claims are all premised on two basic types of alleged conduct: improper disclosures and false threats of legal action. Multiple specific FDCPA provisions address both these types of conduct. Section 1692f is, therefore, inapplicable[.]").  But without knowing if any specific provision is availing, it would seem premature at best to address whether alleged misconduct might be captured by the catch-all provision.  Thus, the court declines to dismiss the § 1692f claim on bootstrapping grounds.

### iii.    Whether the Conduct as Pled Violates the FDCPA or WCA

Finally, defendants contend that even if plaintiffs' claims do not fail as a matter of law, plaintiffs have failed to plead conduct that actually violates the FDCPA or WCA.  The court has already addressed § 1692f of the FDPCA above.   Plaintiffs also invoke Section 427.104(1)(j) of the WCA, which states that a debt collector may not "[c]laim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist,"[8] and Section 425.107 of the WCA, which states that if a court finds as a matter of law that some aspect of, conduct related to, or result of a consumer credit transaction is unconscionable, it shall refuse to enforce or limit the transaction to avoid any unconscionable results.  Plaintiffs rely on the same conduct -- defendants' alleged attempt to garnish the bank account of Joint Effects by adding its name to the garnishment caption -- to support all three of their remaining claims.

Defendants primarily contend that their actions cannot give rise to liability because they acted in accordance with state law when they sought to garnish the Joint Effects

---

[8] Presumably, defendants did not seek to dismiss this claim on the same grounds as the § 1692e(5) claim because, unlike § 1692e(5), the WCA's Section 427.104(1)(j) imposes liability for *threatening* to enforce rights that do not exist *and* for *attempting* to enforce rights that do not exist.  Thus, the statutory text of the WCA supports imposing liability for actions actually taken, rather than solely for *threats* of action.

account.   In support, defendants principally rely on *Beler v. Blatt, Hasenmiller, Leibsker &
Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007), for the proposition that debt collectors who
follow state law garnishment procedures cannot be held liable under the FDCPA.  *See also
Moore v. Fein, Such, Kahn & Shepard, P.C.*, No. 12-1157 (JLL), 2012 WL 3945539, at *6
(D.N.J. June 13, 2012) ("Therefore, the Court does not find that Defendant's conduct was
unfair or unconscionable when it requested an execution of the judgment duly issued by the
court, even if said judgment was later vacated[.]"); *Wetherelt v. Larsen Law Firm, PLLC*, 577
F. Supp. 2d 1128, 1133 (D. Mont. 2008) ("A debt collector who . . . avails itself of lawful
procedures . . . does not act unfairly or unconscionably.").   In *Beler*, a state court entered
judgment on a debt against the plaintiff, who thereafter failed to pay, appeal or declare
bankruptcy.   The debt collector then sent a Citation to Discover Assets to her bank,
pursuant to 735 Ill. Comp. Stat. 5/2-1402; the citation informed the bank that it should not
turn over assets exempt from execution under federal or state law.  *Id.* at 472.  Instead, the
bank froze Beler's assets pending determination of which funds, if any, might be exempt.
Beler then hired a lawyer, who argued that all the funds were exempt under 42 U.S.C.
§ 407(a); the debt collector chose not to contest the assertion and dismissed the citation.
*Id.*  As here, Beler responded with her own suit under the FDCPA, alleging that the debt
collector had violated § 1692f by violating the Social Security Act and Illinois law.

The Seventh Circuit rejected her theory, holding that § 1692f is not an "enforcement
mechanism for other rules of state and federal law" and pointing out that the debt collector
had in fact *followed* Illinois state law by sending the Citation to Discover Assets.  *Id.* at 474.
Holding that it nevertheless violated § 1692f would have required the creation of federal
common law declaring that a hearing on exemption was required *before* freezing assets; or in

17

other words, holding that Illinois state law itself permitted an "unfair or unconscionable" procedure.  *Id.*  The Seventh Circuit declined to take such action, concluding that "such a rule should be adopted (if at all) through the administrative process or a statutory amendment rather than judicial definition of the phrase 'unfair or unconscionable.'"  *Id.*

Regardless of the wisdom of such a rule, the court, therefore, held that section 1692f was not a basis to create one:

> State judges may decide how their judgments are to be collected. This does not necessarily mean that the FTC must steer clear of the subject, but it certainly implies that federal judges ought not use this ambulatory language to displace decisions consciously made by state legislatures and courts about how judgment creditors collect judgments entered under state law.

*Id.* at 475.

However, taking all of the alleged facts in *this* case as true and viewing them in a light most favorable to plaintiffs, as the court must on a Rule 12(c) motion, reveals a somewhat different picture.  Holding defendants liable for attempting to garnish Joint Effects' account does not require the court to pass judgment on Wisconsin's statutory garnishment procedures, because as alleged, defendants did not adhere to those procedures, at least not in substance.  The fact that defendants filed the complaint in the proper form and effected service properly does not change the allegation that they added as a "debtor" another entity that was unnamed as a debtor at all and whose funds they had no legal right to garnish.  *See* Wis. Stat. § 812.01(1) ("Any creditor may proceed against any person who is indebted to or has any property in his or her possession or under his or her control *belonging to such creditor's debtor* or which is subject to satisfaction of an obligation described under s. 766.55(2), as prescribed in this subchapter.") (emphasis added).  There is a difference between using the

18

state's procedures as intended and attempting to use those procedures in a way the law does not support.  *Compare Beler*, 480 F.3d at 474, *with Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1517 (9th Cir. 1994) (jury could rationally find attempt to garnish funds when debtors were actually current in their payments constituted unfair or unconscionable means of collecting a debt under § 1692f).[9]

Said yet another way, if defendants had named *only* VanHuss in their proposed Order to Garnishee and frozen funds expressly belonging to her that turned out to be exempt, they would have used the Wisconsin garnishment procedures properly and could not be subject to FDCPA liability for those actions.  *Cf. Eichman v. Mann Bracken, LLC,* 689 F. Supp. 2d 1094, 1100 (W.D. Wis. 2010) ("Even though a debtor may not believe that she owes a debt or ultimately is able to prove that the debt is invalid, a creditor's use of the state court system to preserve its rights is not improper.").  But no Wisconsin statute or procedure of which the court is aware permits debt collectors to attempt to garnish the funds of a *separate entity* against which they have no judgment.  Thus, this court could find the conduct alleged to be unfair without "displac[ing] decisions consciously made by state legislatures and courts about how judgment creditors collect judgments entered under state law."  *Beler*, 480 F.3d at 475; *cf. Wetherelt*, 577 F. Supp. 2d at 1133 (no FDCPA liability where defendant "followed the procedures provided for under Montana law for obtaining a writ of execution").

It remains true that the FDCPA is not a vehicle to enforce violations of other laws. *Beler*, 480 F.3d at 474; *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 778 (7th Cir.

---

[9] As recently as 2013, in *Todd v. Collecto, Inc.*, 731 F.3d 734 (7th Cir. 2013), the Seventh Circuit has cited *Fox* as an example of conduct that can support a § 1692f claim.  *Id*. at 739.

2007). But the facts alleged here describe conduct that, depending on the actual facts, could constitute an abusive or unfair debt collection practice in and of itself. "The FDCPA . . . was designed to protect against the abusive debt collection practices likely to disrupt a debtor's life." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 343 (7th Cir. 1997). Instituting a garnishment action that seeks to attach the funds not only of a debtor but of the debtor's business partner (or employer, or family member) could certainly prove disruptive to the debtor's life. In any event, the potential for abuse is there, and it is sufficiently troubling that the court is not prepared to rule that a debt collector is free from FDCPA liability as a matter of law when it uses state garnishment procedures in such a manner. *See Fox*, 15 F.3d at 1517 (applying for garnishment when debtor is current in payments could be unconscionable practice under § 1692f).

This is not to say that plaintiffs will ultimately be able to *prevail* on this claim. Defendants may well be able to prove that their addition of Joint Effects to the Non-Earnings Garnishment was a bona fide error and occurred notwithstanding their adoption of procedures to protect against such errors. *Jenkins v. Heintz*, 124 F.3d 824, 828 (7th Cir. 1997) (citing 15 U.S.C. § 1692k(c)). That is not the question currently before this court, however, and as an affirmative defense, it is best reserved for summary judgment in any event. Accordingly, the court need not address it further here.

Last, defendants briefly argue that Baraboo National Bank is at fault for any harm that plaintiffs may have suffered. They cite *Billiar v. Atl. Credit & Fin., Inc.*, No. 09-CV-0133 (PJS/SER), 2011 WL 3418196, at *5 (D. Minn. Aug. 4, 2011), for the proposition that a debt collector is not liable for a bank's error "when a debt collector instructs a financial institution to garnish the funds of a particular debtor, and the financial institution

20

makes a mistake and attaches the funds of someone else[.]" Defendants acknowledge that they named Joint Effects, but point out that in full, they asked Baraboo National Bank to freeze funds belonging to "Patti VanHuss aka Patricia A. VanHuss *DBA* Joint Effects." Instead, defendants argue, the bank froze the funds of Joint Effects *alone*, a legally-independent partnership. Thus, they conclude "[i]t would hardly be fair to blame Defendants for the fact that the Bank froze funds from an account that was not named in the garnishment." (Defs.' Br. Support (dkt. #27) 14.)

This is not a case like *Billiar*, however, in which the bank was clearly the party in error. In *Billar*, the debt collector in fact had actually instructed the bank *not* to attach certain funds, but the bank disregarded that request and attached them anyway. *Billiar*, 2011 WL 3418196, at *4-5 ("Gurstel specifically instructed Hiway to garnish *only* funds that had been contributed by Fiers and *not* to garnish funds that had been contributed by anyone else. . . . Instead, Hiway froze all of the money in all of the accounts—precisely what Gurstel had instructed Hiway not to do, and precisely what Gurstel had warned Hiway was unlawful.") (emphasis in original). In contrast, here, defendants incorrectly drafted the garnishment order, arguably suggesting, if not intentionally misleading, the Bank into believing that "Joint Effects" was simply another name for VanHuss herself.

At best, the trier of fact might find that defendants carelessness needlessly contributed to the bank's ultimate error in attaching funds belonging to Joint Effects, presumably in reliance on defendants' mischaracterization, all in violation of the FDCPA. Regardless, the court is not prepared to place the blame solely at the bank's feet for this error and absolve defendants from liability for an unlawful attachment they apparently precipitated, at least not on the current, limited record. Of course, defendants are free to

21

renew this argument at summary judgment if they have additional evidence or authority to support their position.[10]

ORDER

IT IS ORDERED that:

(1)  Plaintiffs' motion to strike (dkt. #17) is DENIED.

(2) Plaintiffs' motion to quash (dkt. #25) is DENIED.

(3) Defendants' motion for judgment on the pleadings (dkt. #27) is GRANTED IN PART and DENIED IN PART, consistent with the opinion above.

(4) Defendants' motion to stay discovery (dkt. #30) is DENIED as moot.

(5) Defendants' motion for leave to file a reply (dkt. #35) is DENIED as moot.

Entered this 1st day of September, 2015.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

---

[10] Because the court has not dismissed all claims over which it has original jurisdiction, it also declines defendants' invitation to relinquish supplemental jurisdiction over plaintiffs' state law conversion claim.